585 P.2d 574

**John W. PEERY, Plaintiff/Appellee,**

v.

**Neal HANSEN and Adda Lee Hansen, husband and wife, Defendants/Appellants.**

**No. 2 CA–CIV 2883.**

Court of Appeals of Arizona, Division 2.

Sept. 20, 1978.

Russo, Cox, Dickerson & Cartin, P. C. by Thomas G. Cox, Tucson, for plaintiff/appellee.

Law Offices of James A. Mather by Dean A. Sipe, Tucson, for defendants/appellants.

## OPINION

HATHAWAY, Judge.

This is an appeal by Neal and Adda Lee Hansen, husband and wife, defendants in a contract action, from an order of the court commissioner denying their motion for a new trial. Plaintiff-appellee John Peery, seller of a retail business known as Fair Wheel Bikes, filed a complaint against appellants, buyers, for breach of a Deposit Receipt and Sales Agreement. Appellants answered and counterclaimed, seeking rescission of the contract and damages for fraud.

Trial was to the court sitting without a jury. Peery and Neal Hansen testified. Counsel stipulated that the deposition of Charles Spears, appellee's accountant, could be considered by the court as evidence. A transcript from the trial is not a part of the record on appeal. The evidence before us consists of Spears' deposition, the exhibits admitted at trial and certain pre-trial stipulations.

On February 2, 1976, Neal Hansen made a $1,000 down payment to Krones Realty Corporation, appellee's agent, and agreed to purchase appellee's business for $13,500. The purchase price included a merchandise inventory of $5,000. The buyer and seller were to jointly appraise this merchandise and if its worth exceeded $5,000, then the purchase price was to be adjusted upward for that amount. Counsel stipulated that the value of the inventory at the time of the transfer of the business was $5,906.23 and that pursuant to the terms of the agreement, appellants would owe appellee an additional $906.23.

The closing date was February 18, 1976. Counsel further stipulated that the contract was consummated, that appellants entered into possession of the bike shop, that two days after closing, appellants abandoned the premises and repudiated the contract, and that on February 26, 1976, appellee sold the property to a third party for $9,000. Appellee sought damages of $5,406.23, the difference between the agreed on sale price of $14,406.23 and the resale price of $9,000.

Appellants alleged that appellee caused a newspaper advertisement to be published in connection with the sale of his business and that it contained false representations. Appellants sought damages in Count One of their counterclaim for violation of the Consumer Fraud Act, A.R.S. § 44–1522, and in Count Two for common law misrepresentation.

The ad for appellee's bicycle shop contained this statement: "Owner claims $20,-000 yr. gross over $70,000 p/yr." Spears' deposition testimony was that appellee contacted him in November 1975, told him that he was interested in purchasing Fair Wheel Bikes and wanted to know the amount of sales the business had done in the past. After an examination of the poorly kept record of the previous owner, Spears' best determination was that gross sales were approximately $86,500 for 1974 and $38,000 for the first ten months of 1975. He did

not see any information indicating net on these sales. Appellee then purchased the business. Gross sales for the two months he owned the shop were approximately $1,200 for December 1975 and $4,600 for January 1976.

The judgment of the court was as follows:

"THE COURT FINDS that the Defendants breached the contract to purchase the bicycle business. However,

THE COURT FURTHER FINDS that the measure of damages is the difference between the sales price and the market value of the business at the time of the breach. Since no evidence was presented concerning the market value of the property at the time of the breach, no Judgment for damages can be awarded in favor of the Plaintiff."

On the Defendant's Counterclaim,

"THE COURT FINDS that the Defendants knew, or should have known after the investigation he made, that the statements of the agent were not true. Based on the foregoing, the Defendant is not entitled to recover for the alleged fraud. IT IS ORDERED, on the Plaintiff's Complaint, that Judgment be entered in favor of the Defendants.

IT IS FURTHER ORDERED, on the Defendants' Counterclaim that Judgment be entered in favor of the Plaintiff."

Appellee, contending that resale price was evidence of market value at the time of the breach, thereafter made a motion for a new trial and/or an amended judgment. Appellants did not file a written opposition to the motion. After a hearing on the motion and argument by counsel, the court amended its judgment and ordered that appellee have judgment against appellants for $5,406.23, plus costs. Appellants then moved for a new trial, both on the issue of damages and on their counterclaim under the Consumer Fraud Act. The motion was denied.

On appeal, appellants argue that in regard to appellee's complaint, the court erred in failing to apply the proper measure of damages. The proper measure of the vendor's damages upon the purchaser's breach of contract is the difference between the purchase price and the fair market value at the time of the breach. While a subsequent sale is evidence of the market value at the time of the breach and is properly admitted as one of the factors in determining market value, it is not conclusive and the court must properly establish the market value at such time. *Dehahn v. Innes,* 356 A.2d 711 (Me.1976); *Aboud v. Adams,* 84 N.M. 683, 507 P.2d 430 (1973); *Andreasen v. Hansen,* 8 Utah 2d 370, 335 P.2d 404 (1959).

Appellants contend that the only evidence of market value of the bicycle shop was that of resale price.

"Where the appellant questions the sufficiency of the evidence and no transcript of the evidence is submitted to the reviewing court, it will be assumed that the evidence sustained the judgment. *Chemi-Cote Perlite Corp. v. Harborlite Corporation,* 4 Ariz.App. 268, 419 P.2d 398 (1966); *Payne v. Payne,* 12 Ariz.App. 434, 471 P.2d 319 (1970)." *Wing v. Jimenez,* 114 Ariz. 346, 560 P.2d 1253 (App.1976) (Emphasis in original)

We are thus compelled to presume that the court had sufficient evidence before it to determine that resale price was equivalent to fair market value at the time of the breach of the sales agreement.

Appellants next contend that insofar as Count One of their counterclaim is concerned, the court erred in entering judgment for appellee. Appellants alleged in Count One that the published newspaper ad was " . . . a misrepresentation of material facts with intent that others rely thereon and an act which has been declared unlawful by A.R.S. § 44–1522." [1]

---

1. "§ 44–1522. Unlawful practices; intended interpretation of provisions

    A. The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, sup-

In Count Two, appellants alleged:

"The advertisement placed by the plaintiff contains representations which are false, they are material, the plaintiff knew the representations to be false and he intended that they should be acted upon, defendants did not know the representations were false, the defendants relied on the representations to be true, the defendants had a right to rely thereon and defendants were injured."

Appellants advanced two theories of recovery. They alleged in Count Two the existence of the nine elements of common law fraud: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966). To establish an actionable claim of fraud, there must be a concurrence of all nine elements thereof. *Pace v. Sagebrush Sales Company,* 114 Ariz. 271, 560 P.2d 789 (1977).

The court found that appellants knew, or should have known after the investigation made, that the statements of the agent were not true. For this reason, the court denied recovery to appellants on their counterclaim. This ruling was correct as to the second count. Under the common law, before one can have relief from a claimed fraud, he must show not only that he relied on the misrepresentation, but also that he had the right to rely on it. *Lininger v. Sonenblick,* 23 Ariz.App. 266, 532 P.2d 538 (1975).

Appellants alleged a claim for statutory fraud in Count One. In rendering judgment for appellee on appellants' counterclaim, however, the court did not distinguish between the two counts. The elements of a claim for relief under the Con-

pression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been

sumer Fraud Act are not necessarily identical to the elements of a common law fraud action. A violation of the Act is more easily shown. Cf. *Wolverton v. Stanwood,* 278 Or. 709, 565 P.2d 755 (1977).

The necessity for broadened private remedies in the consumer protection field was recognized in *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 521 P.2d 1119 (1974). *Rice v. Snarlin, Inc.,* 131 Ill. App.2d 434, 266 N.E.2d 183 (1970). The enactment of the Consumer Fraud Act enlarged upon the rights of private parties in Arizona to file actions in Fraud.

In concluding that a private right of action was created by the Consumer Fraud Act, our Supreme Court reasoned:

"Although the Act does not specifically provide for a right of action against persons violating the provisions of the article, we believe inferentially such right of action is granted by § 44–1533. It provides:

'The provisions of this article shall not bar any claim against any person who has acquired any monies or property, real or personal, by means of any practice declared to be unlawful by the provisions of this article.'

Clearly the section quoted contemplates that a person *who has been damaged by the practices declared to be unlawful* may exert a claim by reason of such acts." (Emphasis ours) 110 Ariz. at 576, 521 P.2d at 1122.

It is clear that before a private party may exert a claim under the statute, he must have been damaged by the prohibited practice. A prerequisite to such damages is reliance on the unlawful acts. The question in the instant case is thus whether appellants actually knew, before they purchased Fair Wheel Bikes, that the representations in the ad were false. We are unable to so determine from the judgment.

If appellants actually knew that statements in the ad regarding gross sales

misled, deceived, or damaged thereby, is declared to be an unlawful practice."

and net profit were false, then they could not have relied on the truth of the representations and would not have been damaged by them. The court would then have been correct in entering judgment for appellee on the counterclaim since under either theory of fraud, common law or statutory, a private claimant must show reliance. If, however, appellants did not actually know such statements were false, though they should have known, then the court would have erred in entering judgment against them. We hold that the right to rely, though a necessary element in a common law fraud action, is not essential to a statutory fraud action in Arizona. This result effectively creates a liability on the seller.

"There is today a trend away from the doctrine of caveat emptor toward caveat venditor, *see* Lovett, Private Actions for Deceptive Trade Practices, 23 Adm.L.R. 271. Without effective private remedies the widespread economic losses that result from deceptive trade practices remain uncompensable and a private remedy is highly desirable in order to control fraud in the marketplace." *Sellinger v. Freeway Mobile Home Sales, Inc.,* 110 Ariz. 573, 576, 521 P.2d 1119, 1122.

■ Appellants prayed for $5,000 damages for each violation of the statute. The recipient of the civil penalty described in A.R.S. § 44–1531 [2] is not a private individual, but rather the state. A private individual's relief under the Consumer Protection Act is limited to the recovery of actual damages suffered as a result of such unlawful act or practice. The judgment of the trial court is affirmed as to appellee's complaint, but it is reversed as to Count One of appellants' counterclaim. We remand for proceedings consistent with this opinion.

RICHMOND, C. J., concurs.

HOWARD, Judge, specially concurring.

This case illustrates the incorrectness of *Sellinger v. Freeway Mobile Home Sales,*

supra. In *Sellinger* the court stated that anyone who has been damaged by the practices declared to be unlawful may assert a claim by reason of such acts. The unlawful practices are set forth in A.R.S. Sec. 44–1522:

"A. The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise *whether or not any person has in fact been misled,* deceived, or damaged thereby, is declared to be an unlawful practice.

\* \* \*" (Emphasis added)

Under the statute "reliance" is not necessary. I cannot agree with the majority's conclusion that reliance on the unlawful acts is a prerequisite for damages. If reliance is still necessary when suit is brought for an unlawful practice under the Act, then why hold that there is a claim for relief under the Act? The Act would be superfluous. The result of *Sellinger* is that the nine elements of common law fraud need not be shown in Arizona in cases involving sales since there need no longer be any "reliance". Unquestionably, *Sellinger* affects *all* fraud actions in cases involving sales when one looks at the definitions in A.R.S. Sec. 44–1521, as amended. I doubt that the legislature meant to change the common law action for fraud when it enacted the Consumer Fraud Act.

The Arizona Supreme Court should overrule *Sellinger.* The Act names only the Attorney General as the person who enforces its provisions. A.R.S. Sec. 44–1524, et seq. Because the Attorney General has been specifically named as the enforcer of the Act, the long-standing maxim that the designation of a particular mode means the exclusion of all others, applies. *United*

---

2. "§ 44–1531. Violations; civil penalties

A. If a court finds that any person is wilfully using or has wilfully used any act or practice declared unlawful by § 44–1522 of this article, the attorney general upon petition to the court may recover on behalf of the state a civil penalty of not more than five thousand dollars per violation."

*States v. Arredondo,* 31 U.S. (6 Pet.) 691, 725, 8 L.Ed. 547 (1832). *Sellinger* ignores this rule and infers a right of action from A.R.S. Sec. 44–1533 which provides:

"The provisions of this article shall not bar any claim against any person who has acquired any monies or property, real or personal, by means of any practice declared to be unlawful by the provisions of this article."

Such an inference is unsupportable. A.R.S. Sec. 44–1533 does not act as a *grant* of any rights. It merely preserves the common law action for fraud in the private individual. *Sellinger* states that *Rice v. Snarlin, Inc.,* 131 Ill.App.2d 434, 266 N.E.2d 183 (1970) held that language similar to A.R.S. Sec. 44–1533 created a private cause of action in favor of the consumer. First of all, if the Illinois court did rely on such a statute to *create* a cause of action, it would clearly be wrong. Second, the court did *not* so hold. A reading of the Illinois case shows that the Illinois Act is substantially different from the Arizona Act.

*Sellinger* also relies on *Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). This case is not on point. The issue in *Wyandotte* was whether the United States government, which already had a claim for relief under the Rivers and Harbors Act of 1899, could also recover damages for negligence. The court held that it could, even though the statute also provided for a criminal penalty. The use of *Wyandotte* for the proposition that a violation of a penal statute can be the basis of a civil action is puzzling. The court in *Sellinger* says that the Act is remedial and not penal but then cites *Wyandotte* for the proposition that civil actions can be based upon penal statutes. Aside from this seeming contradiction, the principle should not be applicable here. The most a penal statute can do is define a standard of conduct. See Restatement (Second) of Torts, Sec. 286 (1965). Courts can decide that the violation of the standard of conduct will provide the basis of a civil action for damages. What is the standard of conduct involved in A.R.S. Sec. 44–1522? It is pure and simple fraud, for which the consumer already has a claim for relief under common law fraud. The use of *Wyandotte* is completely superfluous unless the court in *Sellinger* meant that the elements of common law fraud such as knowledge of falsity and reliance no longer apply in Arizona to sales.[1]

The legislature has specifically stated in the Consumer Fraud Act how the Act is to be enforced. Before the elements of common law fraud are discarded, I would want a clear mandate from the legislature. A.R.S. Sec. 44–1533 shows that the legislature did *not* intend that there be a private cause of action under the Consumer Fraud Act. *Sellinger* is nothing more than a complete rewriting, rather than an interpretation, of the Act by the court.

I am constrained to hold that reliance is no longer an element of fraud in Arizona in cases involving sales and that the trial court erred in granting summary judgment.

---

1. For the broad definition of "sale" see A.R.S. Sec. 44–1521(5).