594 P.2d 1015

**FLOWER WORLD OF AMERICA, INC., a foreign corporation, Appellant,**

v.

**Kenneth R. WENZEL, Appellee.**

**No. 1 CA–CIV 3873.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 22, 1978.

Rehearing Denied Dec. 27, 1978.

Review Denied April 18, 1979.

Evans, Kitchel & Jenckes, P. C. by Jerry C. Bonnett, Alvin H. Shrago, Phoenix, for appellant.

Steiger, Helm, Kyle & McConnell by John D. Helm, Tempe, for appellee.

## OPINION

SCHROEDER, Judge.

This is an appeal from the order of the trial court refusing to compel arbitration. A.R.S. § 12–2101.01(A)(1). The appellant, Flower World of America, Inc., and Appellee, Kenneth R. Wenzel, entered into a franchise agreement in 1976. Flower World is a New Jersey corporation engaged in the business of licensing franchisees to use its trademarks and tradenames, and supplying technical knowledge and expertise to franchisees in connection with their retail sale of flowers and related products. Under the contract, executed in June, 1976, in New York following Wenzel's response to a Phoenix newspaper ad, Wenzel became a franchisee in return for his payment of $7,500.

Wenzel filed his complaint in this action in November, 1976. The complaint alleged that during the course of the negotiations leading up to the execution of the contract, the appellant was guilty of various deceptive practices and misrepresentations in violation of Arizona's Consumer Fraud Act, A.R.S. §§ 44–1521–1534. Wenzel sought the return of his $7,500 and punitive damages.

Flower World moved for an order compelling arbitration pursuant to both the Federal Arbitration Act, 9 U.S.C. § 1 et seq., and the Arizona Arbitration Act, A.R.S. § 12–1501 et seq., as allegedly required under the broad provisions of the arbitration clause contained in the parties' agreement. That clause provided:

> Except as specifically otherwise provided in this Agreement, the parties hereto agree that any controversy, dispute, claim or question arising out of, in connection with, or in relation to this Agreement or its interpretation, performance, or any breach thereof which cannot be settled amicably between the parties shall be determined solely and exclusively by arbitration in Gloucester County, New Jersey, under the Federal Arbitration Act . .

Wenzel objected on the ground that an action filed under the Consumer Fraud Act should not be subject to arbitration. The trial court denied the application for arbitration. This appeal followed.

The essence of Wenzel's complaint is that by virtue of various, as yet unenumerated, deceptions on the part of Flower World, he was wrongfully induced to enter this contract. The leading case involving the arbitrability of a fraudulent inducement claim is *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). The Court was there faced with a conflict in the lower courts. Some lower courts had held that a claim of fraud in the inducement should be litigated in court on the ground that if the entire contract was fraudulently induced, the arbitration clause in the contract should not be given effect. Other courts, led by the Second Circuit's decision in *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), took the position that the arbitration clause is severable from the contract in which it appears, and that in the absence of a claim that the arbitration clause itself is fraudulently induced, a broad arbitration clause should encompass arbitration of a claim of fraudulent inducement of the entire contract.

The United States Supreme Court, under the terms of an arbitration provision similar to the one in the instant agreement, held that the claim of fraud should be arbitrated. It stressed "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." 388 U.S. 395, 404, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270. *See generally* Domke, *The Law and Practice of Commercial Arbitration* (1968).

The soundness of the *Prima Paint* decision is not directly challenged by Wenzel in this case. Indeed Arizona has adopted the Uniform Arbitration Act, and our public policy favors arbitration. *Jeanes v. Arrow Insurance Co.*, 16 Ariz.App. 589, 494 P.2d 1334 (1972). The question presented here is whether, despite the *Prima Paint* doctrine, Wenzel's claim is not subject to arbitration because the fraudulent inducement of the contract is alleged to be in violation of Arizona's Consumer Fraud Act rather than based upon common law fraud. We hold that the matter is subject to arbitration and, therefore, reverse the trial court's refusal to order arbitration.

The Arizona Consumer Fraud Act was passed by the legislature in 1967 in response to the problem of deceptive practices in the sale of merchandise. The key provision is A.R.S. § 44–1522(A) which proscribes deceptive practices regardless of whether consumers relied on such deceptions to their detriment. This section provides:

A. The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

It would appear at first blush that this transaction, involving a commercial franchise agreement, would not fall within the scope of a statute aimed at consumer fraud in connection with the "sale or advertisement of any merchandise." One would not typically characterize the purchaser of a commercial franchise as a consumer. Our statute, however, provides no definition of "consumer" and broadly defines merchandise in § 44–1521 as "any objects, wares, goods . . . or services." Under this virtually unrestricted statutory scheme the plaintiff has alleged a colorable claim that he has been victimized by a violation of the Consumer Fraud Act. A similar claim

could be made in connection with a large variety of transactions.[1]

The Act provides on its face that it is to be enforced by the Attorney General, and does not expressly grant a private right of action. However, our Supreme Court in *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974), has held that the Act does authorize a private right of action.[2]

Given the broad applicability of this statute and the Supreme Court's decision in *Sellinger*, it is clear that a large number of contract disputes sounding in fraud can be brought within the purview of the Consumer Fraud Act. Were we to hold that such claims are not arbitrable by reason of an alleged statutory violation, our holding would discourage arbitration of contract claims in contravention of the policy announced in *Prima Paint*.

Wenzel's principal reliance is on a series of case refusing to compel arbitration of claims based upon certain specific regulatory statutes. The leading examples are claims under securities statutes, *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Bear v. Hayden, Stone, Inc.*, 526 F.2d 734 (9th Cir. 1975), and antitrust laws, *Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679 (5th Cir. 1976); *American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821 (2d Cir. 1968).

Contrary to the suggestion of the appellee that such cases require court litigation rather than arbitration of any claim alleging a statutory violation, the cases rest upon an analysis of the nature of the claim presented and the policy of the specific regulatory statute involved. The overall criteria for excepting certain claims from arbitration for public policy reasons were summarized in *Cobb v. Lewis*, 488 F.2d 41 (5th Cir. 1974), referring extensively to *American Safety Equipment Corp. v. J. P. Maguire & Co.*:

The *American Safety Equipment Corp.* case outlined three major considerations supporting this rule. The first is the broad range of public interests affected by private antitrust claims. The Court recognized that '[a] claim under the antitrust laws is not merely a private matter', because private antitrust actions are an integral part of the effort of the antitrust laws 'to promote the national interest in a competitive economy'. 391 F.2d at 826. The Second Circuit noted that it is doubtful Congress could have 'intended such claims to be resolved elsewhere than in the courts'. *Id.* at 827. The second is the complexity of the issues and the extensiveness and diversity of the evidence antitrust cases usually involve. These render antitrust claims 'far better suited to judicial than to arbitration procedures'. *Id.* The third is the questionable propriety of entrusting the decision of antitrust issues to commercial arbitrators, who 'are frequently men drawn for their business expertise', when 'it is the business com-

1. In contrast with the Arizona Act, the Illinois Consumer Fraud Act, to which our Supreme Court referred in *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 521 P.2d 1119 (1974), has by means of its definition of consumer given the Act a much narrower application. Section 1(e) of the Act provides:

The term 'consumer' means any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household or in connection with the operation of his household. *See Rice v. Snarlin, Inc.*, 131 Ill.App.2d 434, 266 N.E.2d 183 (1970).
Plaintiff's claim in this case could not be brought under an Act with such a definition.

2. Recent divided opinions by Division Two of this Court considered the elements of the private action. The majority held that the plaintiff must, in order to prove damages, show some reliance on the misrepresentations, at least to the extent that there can be no recovery if there was actual knowledge of the deception. *Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574 (1978). A special concurring opinion sharply criticized the Supreme Court's holding in *Sellinger* that a private cause of action is created by the Act and criticized the wisdom of permitting private causes of action under relaxed standards of common law fraud.

munity generally that is regulated by the antitrust laws'. *Id.* at 827.

*Cobb v. Lewis, supra,* 488 F.2d at 47.

The same principles have been applied in connection with claims under patent laws, *Beckman Instruments, Inc. v. Technical Develop. Corp.,* 433 F.2d 55 (7th Cir. 1970), *cert. denied,* 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed.2d 326 (1971); trademark laws, *Homewood Industries, Inc. v. Caldwell,* 360 F.Supp. 1201 (N.D.Ill.1973); and the Employee Retirement Income Security Act, *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp. 271 (E.D.Pa.1977).

In the field of employment discrimination, the United States Supreme Court has held that the arbitration provisions of a union contract do not bar an individual's claim of employment discrimination under Title VII of the Civil Rights Act. However, the Court stressed the Congressional intent in Title VII to litigate claims of individual employment discrimination. The Court noted the difference between such claims and contractual disputes, stating that "[A]rbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by Title VII." *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 56, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147, 163 (1974).

In contrast to those cases holding arbitration inappropriate, other cases, considering claims related to different types of statutes, have required arbitration to proceed. In *Fallick v. Kehr,* 369 F.2d 899 (2d Cir. 1966), the court held that arbitration of a pre-bankruptcy debt was not precluded by the Bankruptcy Act. In *United States v. ETS-Hokin Corp.,* 397 F.2d 935 (9th Cir. 1968), the court rejected an argument that a Miller Act claimant is entitled to judicial determination of his claim despite the arbitration clause contained in the contract. *See also Pinkis v. Network Cinema Corp.,* 9 Wash. App. 337, 512 P.2d 751 (1973), requiring arbitration of a claim to rescind a franchise agreement allegedly in violation of the Washington Franchise Investment Protection Act.

Applying the principles of those cases to this situation we find no compelling reason for excluding this claim from arbitration. This is essentially a private dispute arising out of a commercial transaction when the parties have agreed how to settle such disputes and involving issues similar to those held arbitrable in *Prima Paint.* Whatever the nature of the deceptions employed in the negotiations with Mr. Wenzel, it cannot be said that the violations could "affect hundreds of thousands—perhaps millions—of people and inflict staggering economic damage," as was the case with the antitrust violations alleged in *American Safety Equipment Corp., supra* at 826. The issues to be arbitrated in the claim are certainly no more extensive or diverse than the issues held to be arbitrable in *Prima Paint,* which, incidentally, involved alleged fraud in connection with the sale of a business. Finally, it cannot be argued that resolution of this commercial dispute by arbitrators drawn from the business world is improper. In short, we find no strong public policy favoring litigation rather than arbitration of the claim presented here.

Finally, we reject the appellee's reliance on a line of cases refusing to compel arbitration or to enforce arbitration awards where the underlying contract itself called for the performance of an illegal act and was unenforceable on that ground. This is not a case where the contract is usurious, *Durst v. Abrash,* 22 A.D.2d 39, 253 N.Y.S.2d 351 (1964), *aff'd,* 17 N.Y.2d 445, 266 N.Y. S.2d 806, 213 N.E.2d 887 (1965); or calls for construction by an unlicensed party, *Franklin v. Nat. C. Goldstone Agency,* 33 Cal.2d 628, 204 P.2d 37 (1949); *Loving & Evans v. Blick,* 33 Cal.2d 603, 204 P.2d 23 (1949); or involves enforcement of a gambling debt, *Smith v. Gladney,* 128 Tex. 354, 98 S.W.2d 351 (1936). In this case neither the legality of the subject matter of the contract nor the capacity of the parties to enter into it is questioned.

Consistent with *Prima Paint,* and the other authorities discussed above, arbitration would not be required to resolve a claim of fraudulent inducement or deceptive prac-

tices in connection with the arbitration clause itself. However, no such contention is made here. Arbitration of this dispute should not affect enforcement of the Consumer Fraud Act by the Attorney General. Accordingly, we find no grounds to justify the refusal to honor the broad arbitration clause in this agreement. The order of the trial court is reversed with instructions to enter an order compelling arbitration.

JACOBSON, P. J., and OGG, J., concur.