795 P.2d 1308

**STEVENS/LEINWEBER/SULLENS, INC., Plaintiff–Appellee,**

**E–Electric Company, Inc., an Arizona corporation, Counterclaimant, Crossclaimant–Appellee,**

v.

**HOLM DEVELOPMENT AND MANAGEMENT, INC., an Arizona corporation; Arthur Holm, a married man; and Schwenn & Associates, Ltd., an Arizona corporation, Defendants–Appellants.**

**No. 1 CA–CV 88–548.**

Court of Appeals of Arizona, Department A, Division 1.

Aug. 7, 1990.

---

**26**

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Michael P. West, Phoenix, for plaintiff-appellee.

Ridenour, Swenson, Cleere & Evans by John T. Moshier, Beth J. Shapiro, Phoenix, for defendants-appellants.

OPINION

CONTRERAS, Judge.

This appeal is brought from an order denying appellant's motion to compel arbitration. On appeal, we consider the question whether, pursuant to A.R.S. § 12–1501, the validity of an arbitration provision is to be separately determined when there is no challenge to the underlying contract. We conclude that the enforceability of an arbitration provision is to be determined by considering the provision as an independent agreement, separate from the underlying contract, regardless of any challenge to the principal contract. We further conclude that the arbitration provision in question is void for lack of consideration. Therefore, we affirm the order of the trial court.

Generally speaking, the claims asserted in the complaint filed by appellee Stevens/Leinweber/Sullens, Inc. ("SLS"), arose out of circumstances surrounding the construction of a retail shopping center in Paradise Valley. Appellant Holm Development and Management, Inc. ("Holm Development"), owned the construction project. Appellant Arthur H. Holm ("Holm") was the president of Holm Development. Appellant Schwenn & Associates, Ltd. ("Schwenn") was the architectural firm on the project. Appellee SLS was the general contractor on the project.[1]

In May, 1988, SLS filed a three-count complaint against appellants and various fictitious defendants. Count I sought damages for Holm Development's alleged breach of its contractual obligation to pay SLS for labor and materials used in construction of the retail shopping center. Count II sought foreclosure of a mechanics' and materialmen's lien against Holm Development's interest in the subject property. Count III sought money damages for specific acts by appellants which alleg-

---

1. Construction contract disputes arising out of this construction project resulted in three separate appeals which were then consolidated by order of this court. Subsequently, two of the appeals were dismissed with prejudice pursuant to stipulation of the parties. As a result, only the appeals against Appellees Stevens/Leinweber/Sullens, Inc., and E–Electric Company, Inc., remain for our consideration. Appellee E–Electric Company, Inc., did not file a response to appellants' opening brief on appeal.

edly constituted "racketeering" under A.R.S. §§ 13–2301 to 13–2317.

In response to SLS's complaint, appellants filed a motion to compel arbitration and to dismiss or stay proceedings. In filing the motion to compel arbitration, appellants relied on A.R.S. § 12–1502 and specific arbitration provisions contained in the construction contract.

Holm Development and SLS had executed a construction contract utilizing American Institute of Architects standardized forms which set forth the general terms and conditions. Section 4.5.1 pertained to "Controversies and Claims Subject to Arbitration." It provided in pertinent part that "[a]ny controversy or Claim arising out of or related to the Contract, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association...."

Holm Development and SLS also executed a document entitled "Addendum to Standard Form of Agreement Between Owner and Contractor." This non-standardized form was drafted by attorneys for Holm Development. Section 15.7 of the addendum provided Holm Development with the unilateral option of selecting either arbitration or litigation as the means of dispute resolution. According to Section 15.7:

If a claim or dispute arises between the parties to this Contract, or between the Owner and any other person or entity related to or connected with the project, or between any other parties when the resolution of the dispute would substantially affect the interests of the Owner, and if any of the parties do not accept the decision of the Architect rendered pursuant to the General Conditions, *the Owner shall have the option of (i) submitting the dispute to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then ob-taining, or (ii) foregoing arbitration and filing a lawsuit or filing a claim in an existing lawsuit before any court of competent jurisdiction, submitting the dispute for decision by the the [sic] court.* [Emphasis added.]

The addendum additionally granted Holm Development the right to reconsider its choice of dispute resolution, even after having exercised its option.

The option can be exercised before or after any other party files a notice of demand for arbitration with the American Arbitration Association or files a petition or claim in any legal proceeding. The election made by the Owner shall be binding upon all other parties to the dispute. Any one election made by the Owner shall not be a waiver of the right to make further elections in connection with the same dispute; *and the Owner shall not relinquish the option, but shall reserve and retain the option throughout any proceedings which may be instituted, for further election at any time, prior to a final judgment in the ongoing proceeding.* [Emphasis added.]

In the trial court, SLS set forth four arguments in opposition to appellants' motion to compel arbitration. First, SLS argued that, under the doctrine of separability, the unilateral arbitration option contained in the construction contract was void for lack of consideration. Secondly, SLS contended that appellants did not make a proper demand for arbitration, as required by the terms of the unilateral arbitration option. SLS's third argument was that appellants Holm and Schwenn did not have standing to demand arbitration because the claims against them did not relate to the general contract. Lastly, SLS contended that dismissing its mechanics' and materialmen's lien claim pending arbitration would jeopardize SLS's property rights.[2]

---

**2.** On February 16, 1990, appellants filed an Advice of Settlement of Certain Claims and Mootness of Certain Issues. Appellants thereby advised this court that all mechanics' and materialmen's liens were extinguished by a deed of trust foreclosure of a senior lien position. As a result, this last issue raised by SLS in opposition to appellants' motion to compel arbitration is moot.

By signed minute entry dated September 7, 1988, the trial court denied appellants' motion to compel arbitration of SLS's claims. Based on this court's holding in *U.S. Insulation, Inc. v. Hilro Construction Company, Inc.*, 146 Ariz. 250, 705 P.2d 490 (App.1985), the trial court found, as a matter of law, the arbitration provision in the general construction contract was unenforceable because it lacked mutuality. The trial court further concluded, under the doctrine of separability, it was prohibited from looking beyond the arbitration agreement itself to find consideration for the arbitration provision in the underlying contract. This appeal followed.

Appellants argue that their unilateral arbitration option is enforceable as a matter of general contract law. They contend that an arbitration provision, like any other individual provision within a contract, must be construed within the context of the entire contract. Therefore, they assert that where the entire contract is supported by adequate consideration, it is sufficient to support an arbitration provision, albeit a unilateral option, contained therein.

■ General principles of contract law do, in fact, control a court's determination of whether a valid arbitration provision exists. However, implementation of these principles is secondary to any relevant statutory or case law. The Arizona Supreme Court has repeatedly stated that the Restatement of Law will be followed *in the absence of* a controlling statute or precedent. *See, e.g., Bank of America v. J. & S. Auto Repairs*, 143 Ariz. 416, 418, 694 P.2d 246, 248 (1985); *Keck v. Jackson*, 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979); *Southern Pacific Transportation Company v. Lueck*, 111 Ariz. 560, 574, 535 P.2d 599, 613 (1975). Arizona has enacted legislation relating to the enforceability of arbitration provisions. *See* A.R.S. §§ 12–1501 and 12–1502. This court has also previously considered the scope of a court's review of an arbitration provision pursuant to A.R.S. §§ 12–1501 and 12–1502. *See U.S. Insula-*

tion, *Inc. v. Hilro Construction Company, Inc.*, 146 Ariz. 250, 705 P.2d 490 (App. 1985). Accordingly, A.R.S. §§ 12–1501 and 12–1502 and Arizona case law provide the framework for our analysis regarding the enforceability of the unilateral arbitration option which is at issue in the case presently before us.

As an initial matter, it should be noted that A.R.S. § 12–1502 restricts judicial review to a determination of whether a valid arbitration provision exists. A.R.S. § 12–1502 provides that:

> On application of a party showing [a valid agreement to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.

This limitation on the scope of judicial review promotes the strong public policy favoring arbitration. The result is that a court will intervene only when the existence of the arbitration agreement is placed in issue.[3]

■ A.R.S. § 12–1501 sets forth the grounds upon which the validity of an arbitration provision may be challenged:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, *save upon such grounds as exist at law or in equity for the revocation of any contract.* [Emphasis added.]

The statute provides for invalidation of an arbitration provision on the same basis as any other contract. Legal or equitable grounds for revoking any contract include allegations that "the contract is void for

---

**3.** The language of A.R.S. § 12–1502(A) is very similar to that of 9 U.S.C. § 4 (1982) which was construed by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg.*

*Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270, 1277 (1967), to limit a court's inquiry to a determination of whether an enforceable arbitration clause exists.

lack of mutual consent, consideration or capacity or voidable for fraud, duress, lack of capacity, mistake, or violation of a public purpose." *U.S. Insulation,* 146 Ariz. at 253, 705 P.2d at 493.

Read in conjunction, A.R.S. §§ 12–1501 and 12–1502 embody the concept of separability endorsed by the United States Supreme Court in *Prima Paint Corporation v. Flood & Conklin Manufacturing Company,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), and later adopted by this court in *U.S. Insulation.*[4] Under what has been termed the "doctrine of separability," an arbitration provision is considered to be an independent and separate agreement between the parties to the underlying contract. *U.S. Insulation,* 146 Ariz. at 253, 705 P.2d at 493. In *Prima Paint,* the United States Supreme Court explained that "... *except where the parties otherwise intend*—arbitration clauses as a matter of federal law are "separable" from the contracts in which they are imbedded...." 388 U.S. at 402, 87 S.Ct. at 1805, 18 L.Ed.2d at 1276.

*Prima Paint* and *U.S. Insulation* involved challenges to the validity of both the arbitration provision and the underlying contract. The case presently before us is factually different. SLS is challenging the validity of the arbitration provision, but not the validity of the principal contract. Appellants therefore urge this court to adopt a view of the doctrine of separability that would permit a court to examine an arbitration provision in isolation from the principal contract when there is a challenge to the validity of both the principal contract and the arbitration provision, but not when it is the arbitration provision alone which is in dispute. Appellants contend that the language in *U.S. Insulation* to the effect that an arbitration provision is "an agreement independent and separate from the principal contract" misstates the law. They further contend that in *Prima Paint* the United States Supreme Court determined that an arbitration provision is "separ*able*," as opposed to "separ*ate*," from the underlying contract, and thus, a court is not required

to consider the arbitration provision as an independent agreement in all cases. Appellants assert that their construction would promote the public policy favoring arbitration.

In our opinion, appellants' construction of the separability doctrine violates the clear language of A.R.S. § 12–1501. The statute has only one sentence. The "saving" clause in that sentence is separated from the remainder of the sentence by a comma, indicating that the "saving" clause qualifies and defines the information preceding the comma. Consequently, the phrase "save upon such grounds as exist in law or in equity for the revocation of any contract" qualifies and defines the basis for determining whether the arbitration provision is "valid, enforceable and irrevocable." The "saving" clause specifically refers to grounds for challenging the validity of the arbitration provision. Notably, the "underlying contract" or "principal contract" in which the arbitration provision is contained is not mentioned in the statute. *See U.S. Insulation,* 146 Ariz. at 254, 705 P.2d at 494.

Appellants' contention that the arbitration provision should be considered in isolation from the principal contract only when it is necessary to preserve the parties' agreement to arbitrate is without merit. A.R.S. § 12–1501 contains no language warranting such an interpretation. Appellants cite to *dicta* in *Matterhorn, Inc. v. NCR Corporation,* 763 F.2d 866, 869 (7th Cir.1985), to support their contention. We find this *dicta* to be unpersuasive in light of the clear language of A.R.S. § 12–1501. Accordingly, we conclude that the doctrine of separability is inherent in the language of A.R.S. § 12–1501.

▐ This court recognizes the strong public policy favoring arbitration as the preferred means of dispute resolution. *See, e.g., Prima Paint,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270; *Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Dean Witter*

---

4. This court implicitly adopted the doctrine of separability in *Flower World of America, Inc. v. Wenzel,* 122 Ariz. 319, 594 P.2d 1015 (App.1978), however, the doctrine was not expressly applied until the holding in *U.S. Insulation.*

*Reynolds Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *U.S. Insulation,* 146 Ariz. 250, 705 P.2d 490; *New Pueblo Constructors, Inc. v. Lake Patagonia Recreation Association, Inc.,* 12 Ariz.App. 13, 467 P.2d 88 (1970). However, that same public policy presupposes the existence of a valid agreement to arbitrate. Only when the arbitration provision is enforceable will the court compel arbitration. In recent opinions upholding arbitration agreements, the federal courts have added to their general endorsement of arbitration provisions the *caveat* that courts must remain on the alert for well-supported claims challenging the validity of arbitration provisions. *See Mitsubishi Motors,* 473 U.S. at 627, 105 S.Ct. at 3354, 87 L.Ed.2d at 455; *Shearson/American Express v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185, 194 (1987); *Rush v. Oppenheimer & Company, Inc.,* 681 F.Supp. 1045, 1051 (S.D.N.Y.1988).

■ The circumstances of the present case exemplify the rationale behind the United States Supreme Court's admonition that in the course of favoring agreements to arbitrate, courts must not be less vigilant in ascertaining whether a valid arbitration agreement exists. The arbitration provision at issue as contained in the addendum grants to one party a unilateral option to arbitrate. There is no mutual obligation to submit contractual disputes to an arbitrator. Appellant Holm Development had the absolute option of selecting either arbitration or litigation as the means of dispute resolution. Moreover, Holm Development had the right to reconsider its choice of dispute resolution "at any time, prior to a final judgment in the ongoing proceeding." It is clear from reading the addendum that Holm Development did not promise to do anything in consideration of the rights granted to it in the arbitration provision. Because under the separability doctrine the arbitration provision is an independent and separate agreement, Holm Development cannot "borrow" consideration from the principal contract to support the arbitration provision. As a result, we conclude that the arbitration provision, which clearly lacks mutuality, is void for lack of consideration.

A unilateral arbitration option clearly does not promote the public policy favoring arbitration. This court cannot close its eyes to the reality of the facts before us. The arbitration provision at issue here grants the holder of the option absolute discretion to select the means of dispute resolution and to change its mind at any time prior to final judgment. This is so grossly inequitable that it runs counter to the philosophy of encouraging arbitration. By its terms, this arbitration provision undermines the purpose and intent of arbitration.

■ Appellants argue that even if the unilateral arbitration option as set forth in the addendum is held by this court to be unenforceable, the parties are still bound to arbitrate disputes pursuant to the mandatory arbitration provision contained in the standardized portion of the construction contract. They assert that under the separability doctrine, only the unilateral option need be deleted from the contract, thereby leaving intact the balance of the contract containing the mutual agreement to arbitrate. We disagree. There is only one arbitration agreement in this contract. The non-standardized arbitration provision as set forth in the addendum modified and superseded the standardized arbitration provision. As such, the non-standardized arbitration provision became the only viable arbitration provision. Since we have concluded that this provision was void for lack of consideration, the trial court was correct in denying appellants' motion to compel arbitration.

Since we decide this case on the basis of the separability doctrine inherent in A.R.S. § 12–1501 and a consideration of the non-standardized arbitration provision, we do not reach the other arguments raised by SLS in opposition to appellants' motion to compel arbitration.

The order of the trial court is affirmed.

FIDEL, P.J., and GERBER, J., concur.