900 P.2d 1220

**WASTE MANUFACTURING & LEASING CORP., an Arizona corporation, Plaintiff/Counterdefendant–Appellee,**

**Ellis Rubenstein and Jane Doe Rubenstein, husband and wife; and Harold Rubenstein and Jane Doe Rubenstein, husband and wife, Third Party Defendants–Appellees/Cross–Appellants,**

**v.**

**Frank R. and Carol HAMBICKI, husband and wife; Peter J. and Beverly Hambicki, husband and wife; Mack M. and Charlene Hambicki, husband and wife; and American Gooseneck, Inc., an Arizona corporation, Defendants/Counterclaimants/Third Party Plaintiffs–Appellants/Cross–Appellees.**

No. 1 CA–CV 93–0228.

Court of Appeals of Arizona, Division 1, Department C.

July 25, 1995.

Sacks Tierney, P.A. by Randall S. Yavitz, James W. Armstrong, Phoenix, for plaintiff/counterdefendant-appellee and third party defendants-appellees/cross-appellants.

Brian Pearson, Phoenix, for defendants/counterclaimants/third party plaintiffs-appellants/cross-appellees.

## OPINION

McGREGOR, Judge.

This appeal arises out of litigation over an alleged agreement between Ellis and Harold Rubenstein (Rubensteins) and Frank, Peter, and Mack Hambicki (Hambickis) to sell the assets of Rubensteins' company, Waste Manufacturing & Leasing Corp. (Wastech), to Hambickis. In this opinion, we address whether the trial court erred in granting a directed verdict against Hambickis in their action for consumer fraud under the Arizona Consumer Fraud Act (the Act).[1] *See* A.R.S. § 44–1522.A. To resolve this issue, we must determine whether a refuse-equipment manufacturing and leasing corporation constitutes "merchandise" under the Act. *See* A.R.S. § 44–1521.5. Because we conclude that Wastech is not merchandise as defined in the Act, we affirm the trial court.[2]

### I.

Wastech manufactures and leases refuse equipment. On June 29, 1990, Rubensteins, the principal officers and shareholders of Wastech, met with Hambickis to discuss the possible sale of Wastech to Hambickis. Hambickis already owned American Gooseneck, Inc., a Wastech competitor. According to Rubensteins, Hambickis agreed to purchase "virtually all of the manufacturing assets of Wastech" for $220,000. Hambickis contend that the agreement to purchase Wastech's assets was a "preliminary" one and that they warned Rubensteins they would not proceed with the deal until they were satisfied that Wastech was worth the purchase price. The parties signed a letter of intent with the understanding that their attorneys would draft closing documents setting out the details of the transaction and that the closing would take place as soon as those documents were finalized. Hambickis also paid Wastech $10,000 as a down payment.

In the weeks that followed, counsel for Wastech and Hambickis exchanged drafts of the agreement for the sale of Wastech's inventory, supplies, and manufacturing equipment, a covenant not to compete, an agreement regarding future equipment sales, and an agreement providing a right of refusal for future equipment leases. During this period, Rubensteins gave Hambickis access to the Wastech plant to inspect the facilities and Wastech's records. According to Rubensteins, Hambickis took possession of the Wastech plant; discontinued all manufacturing operations, including work on products that Wastech contractually was obligated to deliver; disbanded Wastech's manufacturing work force and hired two Wastech employees for Hambickis' own business; appropriated Wastech's price lists, customer lists, technology, and other confidential information; and dismantled various machines, taking parts and materials for use in Hambickis' plant. Hambickis deny that they "took over" the Wastech plant or otherwise interfered with its operations.

Rubensteins allege that on July 16, 1990, Hambickis' lawyer told Wastech's lawyer

---

1. Arizona Revised Statutes Annotated ("A.R.S.") §§ 44–1521 to 44–1534 (1994).

2. We address the remaining factual and legal issues raised in this appeal in a separate memorandum decision issued contemporaneously with this opinion. *See Fenn v. Fenn,* 174 Ariz. 84, 85, 847 P.2d 129, 130 (App.1993).

that "the deal was off." Hambickis deny that they canceled the deal but admit that they sought to postpone the closing after their investigation of Wastech revealed certain problems with the company, including questions regarding the ownership of the Wastech trade name and designs.

On July 17, 1990, Wastech filed a nine count complaint against Hambickis.[3] Hambickis answered denying any liability for the aborted asset purchase. Hambickis also filed a counterclaim against Wastech and a third party complaint against Rubensteins[4] asserting five counts including violation of the Act under A.R.S. section 44–1522.A.

The matter proceeded to trial. At the close of Hambickis' case, Wastech and Rubensteins moved for a directed verdict on all Hambickis' counterclaims and third party claims, including their consumer fraud claim. Regarding the consumer fraud claim, Wastech and Rubensteins based their motion upon two grounds: (1) the Act did not apply to the non-consumer, complex commercial transaction at issue and (2) even if the Act did apply, Hambickis had not presented sufficient evidence of the falsity of any representation by Wastech or Rubensteins to support their consumer fraud claim.

The trial court granted Wastech's and Rubensteins' motion for a directed verdict on the consumer fraud claim, holding "as a matter of law, that this particular factual situation was not contemplated by [the Act, A.R.S. section] 44–1521." The trial court specifically declined to rule on Wastech's and Rubensteins' sufficiency of the evidence argument.

The jury returned a defense verdict on every remaining claim, counterclaim, and third party claim. Hambickis timely appealed, contesting the trial court's dismissal of

their counterclaim and third party claim for consumer fraud. We have jurisdiction pursuant to A.R.S. section 12–2101.B (1994).

## II.

On appeal, Hambickis argue that the trial court's interpretation of the scope of the Act was too narrow and the trial court therefore erred in directing a verdict against them in their consumer fraud claim. In response, Wastech and Rubensteins argue that the trial court properly interpreted the breadth of the Act in holding that it did not apply to the non-consumer, commercial transaction at issue here.[5] Although we agree that the Act does not apply to the sale of Wastech, we reject the reasons articulated by Wastech and Rubensteins. Rather, we find that Wastech, an existing business entity, does not fall within the term "merchandise" as defined in the Act.

### A.

Hambickis rely on two opinions of this court to argue that the sale of Wastech falls within the Act's scope. See *Flower World of America, Inc. v. Wenzel*, 122 Ariz. 319, 594 P.2d 1015 (App.1978); *Peery v. Hansen*, 120 Ariz. 266, 585 P.2d 574 (App.1978). Both decisions applied the Act to the sale of a business. *Flower World*, 122 Ariz. at 321–22, 594 P.2d at 1017–18; *Peery*, 120 Ariz. at 268–69, 585 P.2d at 576–77. Although we recognize the factual similarities between *Flower World*, *Peery*, and this case, those decisions do not fully analyze whether an existing business entity such as a corporation is merchandise under the Act. For that reason, we find neither *Flower World* nor *Peery* dispositive.

*Peery* involved the sale of a bicycle shop through a newspaper advertisement. The *Peery* decision focused upon identifying the elements of a buyer's private right of action

---

3. Hambickis' wives are named as defendants and are parties to this appeal.

4. Rubensteins' wives also are named as third party defendants and are parties to this appeal.

5. Alternatively, Wastech and Rubensteins argue that even if we were to find that the Act applied to this factual situation, we must affirm the trial court because Hambickis did not present sufficient evidence to prevail in an action for con-

sumer fraud because Hambickis did not include the trial transcripts in the record on appeal. Because we find that the Act does not apply to the sale of Wastech, we need not reach this alternative argument. We also need not address Wastech's and Rubensteins' argument that even if the trial court erred in finding the Act inapplicable to this case, it was a harmless error in light of the jury's verdicts rejecting Hambickis' common law fraud and negligent misrepresentation claims.

under the Act; *Peery* assumed without discussion that the sale of a bicycle shop through a newspaper advertisement involved "merchandise" under the Act. 120 Ariz. at 269, 585 P.2d at 577. *Peery* held that a complaining party did not need to show a "right to rely" on the seller's misrepresentations to prevail in a claim for consumer fraud under the Act. *Id.* at 270, 585 P.2d at 578.

In *Flower World*, Wenzel, a franchise purchaser, brought an action against the franchise seller for consumer fraud under the Act. The franchise agreement contained a broadly worded mandatory arbitration clause. The seller moved to compel arbitration pursuant to the franchise agreement, and the trial court denied the motion. The seller appealed, arguing that a claim under the Act was subject to mandatory arbitration pursuant to the franchise agreement. *Flower World* held that a private right of action under the Act could be subject to a mandatory arbitration clause. 122 Ariz. at 324, 594 P.2d at 1020.

Before addressing the primary issue before it, the court in *Flower World*, referring to the Act's "virtually unrestricted statutory scheme," concluded that the Act applies to transactions involving the purchase of a commercial franchise. *Id.* at 321, 594 P.2d at 1017. In our view, the *Flower World* opinion overstates the Act's applicability. In any event, neither *Peery* nor *Flower World* expressly considered the issue this case squarely presents: whether an existing business entity such as a corporation is "merchandise" under the Act.

### 1.

■ To determine the scope of the Act and whether the Act applies to the sale of an existing business entity, we look to the language of the Act and the legislative intent underlying it. *See Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 575, 521 P.2d 1119, 1121 (1974). *Sellinger* recognized that, in determining legislative intent, courts must "consider the context of the statute, the language used, the subject matter, the effects and consequences, and the spirit and purpose of the law." *Id.* (citations omitted). In re-

solving issues of statutory interpretation, we review a trial court's determination *de novo. Chaparral Dev. v. RMED Int'l, Inc.*, 170 Ariz. 309, 311, 823 P.2d 1317, 1319 (App. 1991).

■ To begin our review, we look at the language of the Act. The Act identifies the activity that is unlawful:

> The act, use, or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise* whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522.A (emphasis added).

The Act broadly defines several key terms. The term "merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate, or services." A.R.S. § 44-1521.5. A "sale" includes "any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale." A.R.S. § 44-1521.7.[6] An "advertisement" means "the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44-1521.1. Moreover, a person who can violate the Act or be a victim under the Act includes "any natural person or his legal representative, partnership, domestic or foreign corporation, any company, trust, business entity, or association, any agent, employee, salesman, partner, officer, director, member, stockholder, associate, or trustee." A.R.S. § 44-1521.6.

Although these definitions are expansive, they are not limitless. For the reasons that follow, we conclude the Act does not stretch so far as to include the sale of an existing business entity as a sale of merchandise.

---

**6.** Before the legislature amended the definition of a "sale" in 1975, the definition did not include the language "sales, leases and rentals of any real estate subject to any form of deed restriction imposed as part of a previous sale."

### 2.

In *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259 (3d Cir.1994), the court considered nearly identical consumer fraud legislation. *See* N.J.Stat. Ann. § 56:8–2 (West 1989) (the New Jersey Act). The court ultimately concluded that the New Jersey Act does not apply to the sale of a franchise because the definition of the term "merchandise" did not include franchises. In reaching this conclusion, *J & R* held that "the term 'merchandise' must be construed in light of the overriding purpose of the [New Jersey] Act, which was 'to protect the consumer in the context of the ordinary meaning of that term in the market place.'" *Id.* at 1273. (citations omitted). We agree with the reasoning in *J & R*.[7]

We find *J & R* persuasive because the language in the New Jersey Act is nearly identical to the language in our Act. The New Jersey Act defines the term "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly, to the public for sale." Similarly, Arizona defines the term "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate, or services." A.R.S. § 44–1521.5. As under the New Jersey Act, the definition of "merchandise" under our Act does not include a reference to any existing business entity. *See J & R*, 31 F.3d at 1271.

Although an existing business entity such as a corporation may include among its assets "objects, wares, goods, commodities, intangibles, real estate, or services," an existing business entity itself does not fall within any one of those categories. Existing busi-

ness entities such as corporations therefore are distinct from "merchandise" as defined in the Act. Moreover, as *J & R* noted, existing business entities "are never purchased for consumption. Instead, they are purchased for the present value of the cash flows they are expected to produce in the future...." *J & R*, 31 F.3d at 1274 (citations omitted). We agree that even when a seller offers an existing business entity to the public at large in the same way that a seller would offer cars or washing machines, the Act does not cover the existing business entity precisely because it is a business, not merchandise. *See id.*

If the legislature had intended to include existing business entities within the term "merchandise," it easily could have made that intention clear. Indeed, the legislature did include existing business entities within the term "person," thereby protecting those entities from consumer fraud. If it also had intended to make such entities the subject of consumer fraud actions, we believe it would have done so expressly by defining "merchandise" to include them.

■ In holding that the Act does not cover the sale of a corporation or similar existing business entity, we further the purpose of the Act. The purpose of the Act is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions. *See, e.g., State ex rel. Corbin v. United Energy Corp.*, 151 Ariz. 45, 49, 725 P.2d 752, 756 (App.1986); *Dunlap v. Jimmy GMC of Tucson, Inc.*, 136 Ariz. 338, 344, 666 P.2d 83, 89 (App.1983); *Flower World*, 122 Ariz. at 321, 594 P.2d at 1017. Although cases decided under the Act demonstrate that our courts have not restricted the Act to consum-

---

**7.** The court also found that the purchaser of a franchise was not an ordinary consumer within the framework intended by the legislature. The court stated that

the entire thrust of the Consumer Fraud Act is pointed to products and services sold to consumers in the popular sense. Such consumers purchase products from retail sellers of merchandise consisting of personal property of all kinds or contract for services of various types brought to their attention by advertising or other sales techniques. The legislative language throughout the statute and the evils sought to be eliminated point to an intent to protect the consumer in the context of the

ordinary meaning of that term in the market place.

*J & R*, 31 F.3d at 1272 (citations omitted). In reaching this conclusion, the third circuit expressly disagreed with the interpretation from several appellate courts in New Jersey. *See id.* (rejecting analysis in *Morgan v. Air Brook Limousine, Inc.*, 211 N.J.Super. 84, 510 A.2d 1197 (Law Div.1986) (holding that New Jersey Act covered sale of limousine franchise) and *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J.Super. 216, 293 A.2d 682 (Ch.Div.1972) (holding that New Jersey Act covered sale of cosmetic distributorships)). The New Jersey Supreme Court has not addressed this issue.

er-merchant transactions,[8] no decision has held that the Act encompasses the sale of virtually all the assets of one existing business entity to another existing business entity. To find that the Act covers such a transaction would require stretching the language of the Act beyond its intended reach.

### III.

For the foregoing reasons, we conclude that the trial court did not err in directing a verdict in favor of Wastech on the consumer fraud claim. We therefore affirm the judgment.

NOYES, P.J., and GRANT, J., concur.

8. Several opinions further suggest that neither the sophistication of the parties nor the complexity of the transaction limits the scope of the Act. Arizona courts have applied the Act to transactions that were negotiated at arms length by sophisticated parties or their legal counsel. *See, e.g., Holeman v. Neils,* 803 F.Supp. 237 (D.Ariz. 1992) (fraud related to partnership agreement for real estate investment); *Cearley v. Wieser,* 151 Ariz. 293, 727 P.2d 346 (App.1986) (misrepresentations related to agreement for assignment of rights to commercial liquor license); *Parks v. Macro–Dynamics, Inc.,* 121 Ariz. 517, 591 P.2d 1005 (App.1979) (fraud arising out of agreement to provide venture capital).