**Karen M. STRATTON, Plaintiff,**

v.

**AMERICAN MEDICAL SECURITY, INC., et al., Defendants.**

**No. CV–07–1491 PHX SMM.**

United States District Court, D. Arizona.

Sept. 22, 2009.

## MEMORANDUM OF DECISION AND ORDER

STEPHEN M. McNAMEE, District Judge.

Pending before the Court is Plaintiff Karen M. Stratton's ("Plaintiff") Motion for Class Certification (Dkt.73). Defendants American Medical Security, Inc., United Wisconsin Life Insurance Company, and American Medical Security Group, Inc., now known as American Medical Security Life Insurance Company ("Defendants")[1] responded in opposition (Dkt.83). Plaintiff then replied in support of her motion (Dkt.92). The Court held oral argument on July 30, 2009 (Dkt.95). Having considered the parties' argument, memoranda, and other submissions, the Court now issues this Memorandum of Decision and Order denying Plaintiff's motion.

## BACKGROUND

Plaintiff's claims arise from her purchase of purported group insurance from Defendants (Dkt.1, Compl.¶ 2). Plaintiff alleges that "Defendants marketed and sold MedOne health insurance products to Arizona residents as purported group policies when ... [they] performed no differently than individual insurance policies" (Dkt. 74 at 2:20–23). When Plaintiff applied for insurance from Defendants, the application was titled "Arizona Member Application for Group Insurance" (Dkt. 75, Tuck Decl., Ex. 1). Upon approval, Defendants issued an insurance policy labeled as a "Group Insurance Policy" (*Id.*, Ex. 3 at 2). Defendants then provided Plaintiff with a health insurance card that listed a "Group #" (*Id.*, Ex. 4). Group insurance minimizes the risk to any one insured by spreading the risk among a group

---

1. On July 14, 2008, the Court dismissed with prejudice Defendant Taxpayers Network, Inc. pursuant to the parties' stipulation (Dkts.46, 49).

of insureds (Compl.¶ 25). According to Plaintiff, an insurer can only increase group insurance premiums by doing so for the group and not by singling out individuals (Dkt. 74 at 3:21–28).

Plaintiff alleges, however, that Defendants' policy did not act as such (*Id.*). Rather, Defendants used a tier rating methodology. At the time of policy renewal, Defendants reviewed an individual's health status and placed him in one of three tiers (Tuck Decl., Ex. 8 at 6). Defendants placed insureds who had a low probability of claims in the "preferred" tier. Below the preferred tier was the "manual" tier. Finally, Defendants placed individuals with a high probability of claims in the "substandard" tier. Defendants placed approximately forty percent of MedOne insureds in the preferred tier, forty percent in the manual tier, and twenty percent in the substandard tier (Dkt. 89, Zerbel Decl. ¶ 4).

Based on his tier, an insured's premium would increase by a factor of "X" at renewal (Tuck Decl., Ex. 7 at 41:24–42:15). Defendants assigned an "X" factor of 1.00 to the preferred tier, which meant these customers received no increase in their premium (*Id.*, Ex. 9). Defendants multiplied the manual tier's premium by 1.05, a five percent increase (*Id.*). Finally, Defendants increased the substandard tier's premium by thirty-seven percent, or 1.37 (*Id.*). On December 31, 2002, Defendants ceased the practice of tier rating Arizona MedOne policies (*Id.*, Ex. 6 at 41:23–25).

Plaintiff filed her complaint on August 2, 2007, alleging six claims: (1) Unjust Enrichment; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Violation of Arizona's Consumer Fraud Act, A.R.S. § 44–1521; and (6) Violation of Arizona's Unfair Insurance Practices Act, A.R.S. § 20–443. On January 20, 2009, Plaintiff filed a Motion for Class Certification under Federal Rule of Civil Procedure 23 ("Rule 23") (Dkt.73). Subsequently, the Court held oral argument on July 30, 2009 (Dkt.95).

## STANDARD OF REVIEW

Under Rule 23, one or more members of a class may sue as a representative party on behalf of all members. Fed.R.Civ.P. 23(a). The party seeking class certification must set forth facts sufficient to satisfy the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.; Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308–09 (9th Cir.1977); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). When a party proposes certification pursuant to Rule 23(b)(3), certification is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir.1998) (citing 7A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1777 (2d ed.1986)). To qualify under this subsection, "[c]ommon questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods.*, 521 U.S. at 615, 117 S.Ct. 2231 (internal quotation omitted).

Although the district court has broad discretion to certify a class, the court must undertake a "rigorous analysis" to ensure that class certification is appropriate. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir.1992) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001). While a class certification motion is not the appropriate point at which to resolve the merits of a plaintiff's claim, the court can consider evidence that relates to the underlying merits of the case if it "goes to the requirements of Rule 23." *Hanon*, 976 F.2d at 509 (citations omitted).

## DISCUSSION

Plaintiff seeks to certify a class pursuant to Rule 23(b)(3). Plaintiff alleges that Defendants marketed and sold Arizona MedOne insurance as purported group policies when

they performed no differently than individual insurance policies (Dkt. 74 at 2:20–23). Defendants deny these allegations and contend that Plaintiff cannot meet the requirements for certification.[2] The parties focus their arguments on predominance because they recognize that Plaintiff's certification motion hinges on this issue. Thus, while the Court addresses all of the certification requirements, the Court focuses its analysis on predominance.

## I. Numerosity

A district court may only certify a class if it is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). In her motion, Plaintiff initially sought to certify the following class:

> All persons residing in Arizona who obtained MedOne health insurance from Defendants prior to January 1, 2003. Excluded from the class are (a) Defendants and all directors, officers, agents, and employees of Defendants; (b) judges and judicial personnel; (c) any MedOne insured who was only assigned to a preferred tier at all renewals; and (d) any person who timely opts out of this proceeding.

(Dkt. 74 at 7:14–18). Defendants stated that 15,844 people bought MedOne certificates in Arizona during the proposed time period (Tuck Decl., Ex. 15 at 7). The proposed class excluded the preferred tier at all renewals, approximately forty percent of MedOne insureds (Zerbel Decl. ¶ 4). Therefore, Plaintiff proposed a class with sixty percent of MedOne insureds, or about 9,530 people.

■ Later at oral argument, Plaintiff acknowledged three issues that further narrowed the class. First, if individuals moved into and out of tiers, Plaintiff's estimate could vary from year to year (Dkt. 98, Tr. 8:21–9:1). Second, as Defendants only tier rated during annual renewal and discontinued the practice on December 31, 2002, the Court should narrow the proposed class from persons who obtained the group policy prior to

January 1, 2003 to those persons who obtained it prior to January 1, 2002 (*Id.* at 10:18–25). Third, the Court should exclude individuals who cancelled their insurance before their initial renewal (*Id.* at 13:8–25). As such, Plaintiff conceded that her proposed class is narrower than initially proposed in her motion.

Additionally, while Defendants contend that the class cannot be certified, Defendants argue that Plaintiff's proposed class includes individuals who did not suffer harm. Although manual insureds experienced a five percent premium increase because of tier rating, under the current method of block rating, all insureds experience a six percent increase (*Id.* at 38:5–25; Zerbel Decl. ¶ 5). Therefore, Defendants conclude that the manual tier cannot be certified because they "paid approximately what they would have paid in the absence of tier rating (slightly less)" (Dkt. 83 at 5:23–24). Plaintiff contests Defendants' characterization of the manual tier; she asserts that the manual tier suffered a compounding effect on their premiums through the years (Tr. 11:12–12:6). Even if the Court narrowed the class according to Defendants' argument, though, it would still satisfy numerosity. Because the substandard tier comprised twenty percent of MedOne insureds, the narrowest class would have around three thousand members (*See* Zerbel Decl. ¶ 4). Plaintiff still satisfies the numerosity requirement as the joinder of all three thousand proposed members would be impracticable. *See* Fed.R.Civ.P. 23(a)(1).

## II. Commonality

■ In order to satisfy commonality, a plaintiff must show that "there are questions of law and fact common to the class." Fed. R.Civ.P. 23(a)(2). The plaintiff's necessary showing to satisfy commonality is "minimal" and "less rigorous than the companion requirements of [predominance and superiority]." *Hanlon,* 150 F.3d at 1019–20. Fur-

---

2. Defendants also contend that tier rating is legal. Defendants allege that Arizona law explicitly allows the consideration of health factors and does not require premium increases to be spread equally among the group (Dkt. 83 at 6:3–8). Moreover, the Arizona Department of Insurance

concluded that tier rating is a permissible practice for group insurance under Arizona law (*Id.* at 6:14–16). The legality of Defendant's behavior involves an analysis of the merits, though, which this Court cannot now resolve. *See Hanon,* 976 F.2d at 509.

thermore, commonality can be construed permissively. *Id.* at 1019. "All questions of fact and law need not be common to satisfy the rule." *Id.* A proposed class can show commonality by "[t]he existence of shared legal issues with divergent factual predicates," or by "a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

■ Here, Plaintiff seeks to certify a class around the common issue of "whether class members should have the opportunity to receive reimbursement of premiums related to tier rating when such policies were sold as group coverage" (Dkt. 74 at 10:9–12). Plaintiff separates this issue into three parts: (1) whether Defendants utilized a tier rating methodology at renewal for the MedOne policies after promoting and selling them as group policies; (2) whether Defendants made the group representation in its advertisements and policy; and (3) whether Defendants committed violations of Arizona law by selling purported group insurance that they tier rated at renewal (*Id.* at 10:1–8).

At this stage, Plaintiff need not show that the class members have all questions of fact in common in order to satisfy commonality. *See Hanlon,* 150 F.3d at 1019. Plaintiff can show commonality by "[t]he existence of shared legal issues with divergent factual predicates." *See id.* Plaintiff restricts the common question to whether the class can recover if tier rated policies were sold as group coverage. Defendants maintain that the tier rated insurance properly and legally functioned as group insurance (Dkt. 83 at 5–6). As Plaintiff proposes it, the legal issue is whether Defendants made false promises or misrepresentations regarding the group insurance. Even though class members' claims could differ factually, this common issue is sufficient to meet the minimal requirements for commonality. *See Hanlon,* 150 F.3d at 1019–20.

## III. Typicality

■ Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Under the rule's permissive standards, a plaintiff's

claims need not be substantially identical, but only "reasonably co-extensive with those of absent class members." *Hanlon* 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon,* 976 F.2d at 508 (quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985)). The court looks to "the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (internal quotation omitted). However, "class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir.1990)).

■ Plaintiff seeks "reimbursement of premiums related to tier rating when such policies were sold as group coverage" (Dkt. 74 at 10:10–12). Other proposed class members would have the same or similar alleged injury, an increased premium. Moreover, the nature of Plaintiff's claim is that Defendants misrepresented their group insurance when they promoted and sold it. By alleging that Defendants generally misrepresented the group insurance to potential insureds during their marketing and sales, Plaintiff can show that the nature of her claim is not based on conduct unique to her. *See Hanon,* 976 F.2d at 508. Therefore, Plaintiff's claims are sufficiently co-extensive with the claims pursued on behalf of the class to satisfy typicality. *See Hanlon* 150 F.3d at 1020.

Defendants argue that Plaintiff "is subject to multiple unique defenses" (Dkt. 83 at 17:7). Most crucially, Defendants argue that Plaintiff did not rely on any alleged representations (*See id.* at 3:7–8). Plaintiff admitted that she purchased the MedOne insurance because of the low price and not because of the "group" designation (*Id.*). However, the Court does not consider the specific facts of Plaintiff's claims, but only the nature of her claims in order to deter-

mine typicality. *See Hanon*, 976 F.2d at 508. Although Defendants cannot use Plaintiff's non-reliance as a basis for denying class certification, the Court can consider evidence which goes to the requirements of Rule 23. *See id.* at 509. Whether absent class members will suffer if Plaintiff's claims are subject to unique defenses is intertwined with whether common questions predominate over individual ones, which the Court discusses below.

## IV. Adequacy of Representation

■ A plaintiff must also demonstrate that she "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The court must examine two issues: (1) whether the named plaintiff and her counsel have any conflicts of interest with other class members, and (2) whether the named plaintiff and her counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. In determining the latter issue, the court can consider the competency of counsel. *Id.* at 1021.

■ Plaintiff demonstrates vigorous prosecution on behalf of the class by showing that class counsel is competent. The parties do not dispute that Plaintiff's counsel is "highly experienced in complex litigation" (Dkt. 74 at 11:17–20). Moreover, courts have previously appointed Plaintiff's counsel "in a variety of class actions across the United States" (*Id.*). As such, the Court finds class counsel competent. *See Hanlon*, 150 F.3d at 1021 (finding class counsel competent when the opponents did not seriously challenge the issue and the counsel's record of experience dispelled any cause for concern). Thus, Plaintiff has met her burden of showing she will vigorously prosecute the action on behalf of the class.

However, similar to its arguments under typicality, Defendants argue that there are unique defenses to Plaintiff's claim, which create conflicts of interests so that Plaintiff is unable to adequately represent the class (Dkt. 83 at 3:5–6, 17:8–11). Defendants maintain that Plaintiff purchased the group policy because of its low price, and not because of the group designation (*Id.* at 3:7–8). Defendants contend that Plaintiff can only meet the typicality and adequacy require-

ments if the Court ignores the representations made to her and her lack of reliance on them (*See id.* at 17:8–11). The issue of reliance on the "group" representation overlaps with predominance, which the Court discusses next.

## V. Predominance

■ Predominance tests the relationship between the common and individual issues. *Hanlon*, 150 F.3d at 1022. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3). In other words, the court must determine "whether proposed classes are sufficiently cohesive." *Hanlon*, 150 F.3d at 1022; *Amchem Prods.*, 521 U.S. at 623, 117 S.Ct. 2231. Assuming that a plaintiff has already established commonality, plaintiff's burden of proof to show predominance is "far more demanding" than commonality. *Hanlon*, 150 F.3d at 1022; *Amchem Prods.*, 521 U.S. at 623–24, 117 S.Ct. 2231. "If common questions do not predominate over the individual ones so that class certification is warranted, in appropriate cases, the district court can isolate the common issues and proceed with class treatment of those particular issues." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.1996).

■ "Predominance is a test readily met in certain cases alleging consumer or securities fraud ..." *Amchem Prods.*, 521 U.S. at 625, 117 S.Ct. 2231 (citing Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966)). Courts have recognized that certain consumer fraud claims may be less manageable as a class action, though. *See Winkler v. DTE, Inc.*, 205 F.R.D. 235, 242 (D.Ariz.2001). In determining predominance for a fraud case, the court can consider whether there is material variation (1) in the representations made by the defendants to the class members or (2) in the kinds or degrees of reliance by members of the class. *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990 (9th Cir. 2006) (citing Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966)).

## A. Plaintiff Claims under Arizona's Statutory Fraud Acts

The parties focus on Plaintiff's claims under Arizona's statutory fraud acts. Defendants argue that individual issues of reliance overwhelm any common issues, and Plaintiff herself did not rely on the group designation (Dkt. 83 at 1:4–17). Therefore, Defendants contend that the class is not sufficiently cohesive to meet the predominance requirement.

### a. Kinds or Degrees of Reliance

When considering class certification, the court should analyze a plaintiff's allegations in the complaint and other materials in the record. *Blackie v. Barrack*, 524 F.2d 891, 900–01 (9th Cir.1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The court should also consider the nature and scope of proof needed to establish those allegations. *Id.* Moreover, the Ninth Circuit's recent decision in *Yokoyama v. Midland National Life Insurance Company* is instructive. 2009 WL 2634770 (9th Cir.2009). In *Yokoyama*, the plaintiffs claimed that the defendant marketed annuities through deceptive practices in violation of Hawaii state law. *Id.* at *1. In determining whether common issues predominate over individual ones for a state law fraud claim, the Ninth Circuit found that the dispositive issue is whether the state's fraud act requires a showing of individualized reliance. *Id.*

Plaintiff brings claims under Arizona's Consumer Fraud Act ("ACFA"), A.R. S. § 44–1521, and Unfair Insurance Practices Act ("AUIPA"), A.R.S. § 20–443. These statutory fraud acts provide an injured consumer with an implied private right of action against the violator of the acts. *Holeman v. Neils*, 803 F.Supp. 237, 242 (D.Ariz.1992); *Sellinger v. Freeway Mobile Home Sales, Inc.*, 110 Ariz. 573, 576, 521 P.2d 1119, 1122 (1974) (holding that ACFA created a private right of action). In order to prevail, a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of merchandise, and (2) consequent and proximate injury resulting from the promise. *Kuehn v. Stanley*, 208 Ariz. 124, 129, 91 P.3d 346, 351 (2004) (citing

*Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 605, 617 P.2d 767, 771 (1980)). As a plaintiff must show that he was damaged, "[a] prerequisite to such damages is reliance on the unlawful acts." *Peery v. Hansen*, 120 Ariz. 266, 269, 585 P.2d 574, 577 (1978). While a plaintiff must show reliance for both common law and statutory fraud, statutory fraud is more easily shown than common law fraud. *Id.* Under common law, a plaintiff must illustrate that he had a right to rely on the defendant's misrepresentations. *Id.* (citing *Lininger v. Sonenblick*, 23 Ariz.App. 266, 532 P.2d 538 (Ct.App.1975)). For statutory fraud claims, though, "[a]n injury occurs when a consumer relies, even unreasonably, on false or misrepresented information." *Kuehn*, 208 Ariz. at 129, 91 P.3d at 351.

Although Plaintiff does not have to show reasonable reliance, questions still loom over whether Plaintiff can still show reliance on a class-wide basis. Plaintiff primarily relies on *Siemer v. Associates First Capital Corp.* to demonstrate class-wide reliance. 2001 WL 35948712 (D.Ariz. March 30, 2001) (disagreeing with the magistrate judge's findings of law in the report and recommendation but adopting it for other reasons). In *Siemer*, the plaintiffs alleged that the defendants engaged in wrongful lending practices and used predatory lending practices to take advantage of unsophisticated customers in the subprime lending market. *Id.* at *6. Although the plaintiffs brought several counts, the plaintiffs sought certification limited to the defendants' alleged scheme in Arizona of selling credit life insurance pursuant to a deceptive standardized form document. *Id.* at *4. The plaintiffs proposed a class of individuals who purchased "credit life insurance in connection with any real estate loan made by [the defendants] that will not pay off the loan in the event of their death during the term of coverage." *Id.* The district court found that the plaintiffs sufficiently demonstrated reliance under ACFA just by their purchase of the credit life insurance. *Id.*

However, the Ninth Circuit recently discussed how to determine whether common issues predominate over individual ones in a proposed class action based on a state law fraud claim. *Yokoyama*, 2009 WL 2634770.

The Ninth Circuit found that the issue is one of state law—whether the state's fraud act requires a showing of individualized reliance. *Id.* at *1. In *Yokoyama*, the Ninth Circuit found that the applicable state statute had an objective test, and therefore, actual reliance need not be established. *Id.* As the fact finder only needed to determine whether the defendant's representations were *capable of* misleading a reasonable consumer, there was no reason to look at the circumstances of each individual purchase. *Id.* Moreover, the plaintiffs had narrowly focused their allegations on the defendant's omissions in their written brochures. *Id.* at *5. The plaintiffs "crafted their lawsuit so as to avoid individual variance among the class members ... [and] not require the fact-finder to parse what oral representations each broker made to each plaintiff." *Id.* Therefore, the factfinder could focus on the standardized written materials and determine under the objective standard whether they would likely mislead a reasonable consumer. *Id.*

■ While *Yokoyama* is instructive, this case can be distinguished from both *Yokoyama* and *Siemer*. As discussed above, Arizona's statutory fraud acts require proof of actual reliance. Rather than omissions, Plaintiff alleges that Defendants made affirmative oral and written misrepresentations before the proposed class members purchased the group policy.[3] As such, each proposed class member must prove that he or she relied on the misrepresentations and was damaged. *See Peery*, 120 Ariz. at 269, 585 P.2d at 577. Courts rarely presume reliance outside of the securities fraud context, and even for securities fraud cases, the presumption only applies in cases primarily involving omissions. *E.g., Poulos v. Caesars World, Inc.*, 379 F.3d 654, 666 (9th Cir.2004) (citations omitted). Although the district court in *Siemer* held that reliance could be presumed simply by the class member's purchase of the credit life insurance, the *Siemer* decision involved a context-dependent case with a product that plaintiffs alleged was

inherently flawed. 2001 WL 35948712, at *25. The defendants had also engaged in a larger scheme of wrongful and predatory lending practices that took advantage of unsophisticated customers in the subprime lending market. *Id.* at *6. Most importantly, the overwhelming authority in Arizona specifically requires proof of actual reliance. *See Correa*, 126 Ariz. at 605, 617 P.2d at 771; *Peery*, 120 Ariz. at 269, 585 P.2d at 577; *Kuehn*, 208 Ariz. at 129, 91 P.3d at 351. In this case, if the Court presumed reliance simply by the proposed class member's purchase of the group insurance, then the Court would effectively eliminate the reliance requirement. Thus, the Court must consider whether Plaintiff's claims require individualized reliance showings such that class issues do not predominate over individual ones.

Defendants contend that there are individualized issues of reliance for several reasons. Defendants first argue that each class member may have a different understanding of the word "group" (Dkt. 83 at 10). Defendants allege that there are many different types of group policies, and the word "group" does not denote that an insured will receive the exact same rate as every other insured (Tr. 32:8–10). Defendants liken their group policy to an Auto Club, where the insured understands that although he has a group policy, if he receives several tickets, then his rate may increase (*Id.* at 32:12–20). Similarly, while Plaintiff did not know with certainty what group insurance meant, she understood that Defendants calculated her premiums based on her health status (Dkt. 84, Antia Decl., Ex. A at 148:3–149:10) ("Q. Okay. And depending on your health, that would also then affect the amount of the premium; is that correct? A. Yes."). She even testified that she "always felt pretty confident about [her] health" at the time she bought the group policy, which worked to her advantage by keeping her premium low, and she did not foresee her health problems that later developed (*See id.* at 148:20–149:10; Tr. 42:24–43:7). Even an individual who has an unreasonable understanding of the word "group" may be part of a class, though. *See Kuehn,*

---

3. While this is not a case of omissions, Defendants maintain that Arizona law does not require insurance companies "to explain the extremely

complex actuarial process for how they set rates" (Tr. 47:16–18).

208 Ariz. at 129, 91 P.3d at 351. However, although the proposed class need not show reasonable reliance, each class member must still show that he actually relied on a false designation or misrepresentation of group. *See id.; see also Peery*, 120 Ariz. at 269, 585 P.2d at 577.

Defendants assert that each proposed class member may not have relied on the group representation (Dkt. 83 at 11:5–9). Each class member made individual considerations other than the group designation, such as of price or benefits. These considerations affected a class member's decision to purchase insurance differently from another class member (*Id.* at 10–11). In fact, a proposed class member may not have relied on the group designation, as evidenced by Plaintiff's admission that she solely considered price in her purchase (*Id.* at 10:17–20). At various points in her deposition, Plaintiff testified that she was "mainly" or "probably more concerned" with the insurance price (Antia Decl., Ex. A at 45:1, 60:22). When asked by defense counsel if the group or individual designation made no difference to her so long as she received a low monthly premium, she replied "Yes" (*Id.* at 140:15–19). Although proposed class members may have considered the group designation among other factors, Plaintiff's testimony demonstrates that the fact finder would necessarily have to determine whether each class member actually relied on the group representation.

Finally, Defendants contend that Plaintiff and proposed class members knew that Defendants would take their individual health status into account. Therefore, they did not rely on the group designation in the manner that Plaintiff alleges. For example, as noted, Plaintiff understood that Defendants calculated her premiums based on her health status (*Id.* at 148:3–149:10). Moreover, Defendants allege that each insured underwent a health exam or completed a detailed health questionnaire when first applying for the group insurance (Tr. 67:19–22). Therefore, from the beginning, insureds knew that Defendants considered their individual health factors because Defendants used those factors to set the initial rate (*Id.* at 69:1–4). Thus, the fact finder would need to determine whether each class member relied on Defendants' representations by believing that Defendants would not take certain individual health factors into account through tier rating when renewing the group policy.

Although Plaintiff's proposed class may share a common legal issue, the fact finder must determine whether each class member relied on Defendants' representations of the group policy by thinking that it would not function as a tier rated one. As the fact finder would need to make individualized inquiries as to each class member's reliance on the group representation, the Court finds that the proposed class's individual issues predominate over any common ones.

### b. Material Variation in the Representations

■ Moreover, Plaintiff has not set forth enough facts showing that Defendants made common written and/or oral representations to the class, which also leads to individual issues of reliance. A class action may be suitable when defendants perpetrated a fraud on numerous persons by the use of similar misrepresentations, even if there is a need for separate determination of the damages sought by individuals within the class. Fed.R.Civ.P. 23(b)(3) advisory committee's note (1966). In order to hold a defendant liable for class-wide fraud, some circuits require greater degrees of uniformity in the misrepresentations to class members. *First Alliance*, 471 F.3d at 990 n. 3. The Ninth Circuit, though, follows "an approach that favors class treatment of fraud claims stemming from a 'common course of conduct.'" *Id.* at 990 (citing *Blackie*, 524 F.2d at 902; *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 914 (9th Cir.1964)).

#### 1. Written Misrepresentations

Plaintiff contends that before prospective insureds purchased the MedOne policy, Defendants made common written representations to them through four documents. First, the prospective insureds received the Arizona member application for group insurance (Tuck Decl., Ex. 1; Tr. 20:12–22). They also received a simple membership form for Taxpayers Network, Inc., an association they

were required to join in order to receive the group rates (Tuck Decl., Ex. 2; Tr. 20:22–21:1). The prospective insureds signed both the member application and association form. Then, they received the plan brochure (Tr. 21:2–8). Finally, after completing the application and form, they received the certificate of coverage for the group policy (*Id.* at 21:9–10).

Through these documents, Plaintiff contends that Defendants set forth their entire obligations in writing (*Id.* at 21:20–22). Plaintiff alleges that Defendants admitted to the Arizona Department of Insurance that they made all of their disclosures in writing (*Id.* at 22:15–17; Tuck Decl., Ex. 12). Defendants particularly admitted that they disclosed the tier rating through the certificate of coverage, which every Arizona MedOne insured received (Tuck Decl., Ex. 6 at 48:3–7). Moreover, both the member application and the certificate of coverage had an integration clause, which essentially stated that these two documents contained the entire . insurance contract and the insurance agents could not modify the contract (Tr. 20:12–22, 21:9–23). Thus, Plaintiff argues that Defendants made common written representations to the proposed class.

However, it is unclear at what time every insured would have received the written documents. Defendants contest Plaintiff's and other proposed class members' reliance on these documents before purchasing the policy. Plaintiff testified that she did not receive the plan brochure during the application process, and she only received the certificate of coverage after enrollment (Antia Decl., Ex. A at 48:6–17, 76:1–6, 233:10–15). Therefore, Plaintiff did not rely upon these written documents (Dkt. 83 at 12:16). If class members did not receive certain documents, as evidenced by Plaintiff's testimony, then Plaintiff cannot show that Defendants made common written representations to the entire class before each class member purchased the group policy. In sum, Plaintiff has not set forth enough facts demonstrating that Defendants made common written representations to the class.

### 2. Oral Misrepresentations

Aside from written documents, though, the Ninth Circuit has held that oral misrepresentations can be actionable as a fraud claim. *First Alliance,* 471 F.3d at 990–91. The Ninth Circuit rejects a "talismanic rule that a class action may not be maintained where a fraud is consummated principally through oral misrepresentations, unless those representations are all but identical." *Id.* at 991 (quoting *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.,* 140 F.R.D. 425, 430 (D.Ariz.1992)). The plaintiff must demonstrate a "centrally orchestrated strategy" so that the "center of gravity of the fraud transcends the specific details of oral communications." *Id.* The court ultimately looks to the underlying scheme, not just the specific misrepresentations. *Id.* A Plaintiff can meet her burden by showing that defendants or their agents used "a standardized sales pitch" to induce customers to enter into an agreement. *Id.*

Plaintiff contends that Defendants used a standardized sales pitch to market their group insurance (Dkt. 92 at 6:12). Defendants instructed their agents on the information they should provide to potential insureds: "The exclusions, limitations, provisions, and benefits provided under the plan should be clearly and accurately described to the proposed applicant. *Be sure to use the plan brochures*" (*Id.* at 6:8–10 (emphasis added)). On the other hand, Defendants allege that Plaintiff has not presented any evidence of a uniform sales script, and the evidence refutes any such inference (Dkt. 83 at 12:3–5). According to Defendants, over 1,500 independent agents sold Defendants' insurance product, along with the products of competing insurance companies such as Aetna and Cigna (Tr. 30:20–24). Defendants allege that the independent agents' representations to customers "varied dramatically" during sales meetings (Dkt. 83 at 12:6–8). The independent agents presented different insurance policies based upon the client's "specific questions, goals, and insurance needs," and they sold "whatever work[ed] out for the particular customer" (*Id.;* Tr. 30:24).

Moreover, the independent agents specifically informed many potential insureds before they purchased the group insurance that Defendants considered individual health factors. Defendants submit the affidavits of two independent insurance agents, including the agent who sold the group policy to Plaintiff (Dkt. 85, Byrne Decl.; Dkt. 86, Bolduc Decl.). These two agents both state that they typically informed customers about how Defendants considered individual health factors, among other factors, in order to determine renewal premiums (Byrne Decl. ¶ 7; Bolduc Decl. ¶ 5). On the other hand, if Defendants allege that all independent insurance agents disclosed Defendants' use of health factors, then Plaintiff argues that this fact helps demonstrate that they made uniform oral representations (Tr. 24:3–14). Furthermore, Plaintiff contends that the independent agents made misleading statements because Defendants could legitimately consider certain individual health characteristics under the law, such as the change in case characteristics and the change in new business (*Id.* at 24:15–25:12).[4] At the same time, Plaintiff alleges that Defendants could not legitimately consider other individual health characteristics through tier rating.

This distinction between legitimate and illegitimate considerations of individual health factors also leads to individual issues of reliance, though. In addition to determining what representations an independent agent made to each class member, the fact finder would have to determine whether the agent represented Defendants' legitimate or allegedly illegitimate consideration of individual health characteristics. Moreover, the fact finder would have to determine whether the class member actually relied on any misrepresentations and was damaged. Therefore, Plaintiff cannot show a "centrally orchestrated strategy" so that the "center of gravity of the fraud transcends the specific details of oral communications." *First Alliance,* 471 F.3d at 991.

In conclusion, Plaintiff has not demonstrated an underlying scheme through written or oral representations. Additionally, the Arizona statutory fraud acts require proof of actual reliance, and Plaintiff cannot demonstrate reliance on a class-wide basis. Plaintiff's statutory fraud claims require individualized reliance showings such that class issues do not predominate over individual ones. For these reasons, Plaintiff has not met her burden of showing predominance, and the Court cannot certify a class for the statutory fraud claims.

## B. Plaintiff's Other Claims

While the parties focus their predominance arguments on Plaintiff's statutory fraud claims, Plaintiff also brought claims for unjust enrichment, breach of contract, breach of a fiduciary duty, and breach of the implied covenant of good faith and fair dealing. Defendants argue that reliance is the lynchpin of all of Plaintiff's claims. Plaintiff generally argues, though, that she has met the predominance requirement for all of the claims (*See* Dkt. 74 at 12). Alternatively, Plaintiff contends that even if the Court does not find reliance, the Court can still certify the other claims because they do not have a reliance requirement (Tr. 19:3–5).

 Plaintiff readily concedes, though, that courts rarely certify classes for breach of fiduciary duty claims (Tr. 16:19–20). A fiduciary duty exists whenever a person places trust and confidence in the integrity and fidelity of another. *Eagerton v. Fleming,* 145 Ariz. 289, 292, 700 P.2d 1389, 1392 (1985). "The existence of a confidential relationship is a question of fact." *Id.* Thus, in cases involving allegations of fiduciary duty that arise out of the facts of a specific relationship, the claim is not well-suited to a class action. Moreover, in the fraud context, "the breach of duty by the person in the confidential or fiduciary relationship must induce justifiable reliance by the other to his detriment." *Dawson v. Withycombe,* 216 Ariz. 84, 107, 163 P.3d 1034, 1057 (2007). As breach of fiduciary duty claims involve individual issues of reliance that overwhelm any common issues, the Court cannot certify a

---

4. The change in case characteristics included such factors as a change in age bracket, location, or smoking status (Tuck Decl., Ex. 8 at 5). The change in new business reflected the rising costs of health care and experience of MedOne certificate holders nationwide (*Id.*).

class for Plaintiff's breach of a fiduciary duty claim.

■ With regards to Plaintiff's breach of contract claim, Plaintiff does not point to a specific provision of the contract that Defendants breached. Plaintiff proposes a common issue that only relates to Defendants' marketing and selling of the group policy.[5] Defendants argue that individual issues exist concerning what was offered, accepted, and whether a meeting of the minds occurred (Tr. 39:17–22). Defendants note that Arizona law requires consideration of the reasonable expectations of the insured (*Id.* at 39:23–24). Indeed, the Arizona Supreme Court adopted the "reasonable expectation" rule from the Restatement (Second) of Contracts § 211 for the interpretation of standardized insurance contracts. *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 389–93, 682 P.2d 388, 394–98 (1984); *see Liberty Ins. Underwriters, Inc. v. Weitz Co., LLC*, 215 Ariz. 80, 83, 158 P.3d 209, 212 (2007) ("Courts construe the written terms of insurance contracts to effectuate the parties' intent . . . and to protect the reasonable expectations of the insured.") (internal citations and quotations omitted). As with contracts generally, a standardized insurance contract "should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances." *Darner Motor Sales*, 140 Ariz. at 393, 682 P.2d at 398 (citing *Smith v. Melson*, 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983)). Here, the fact finder would need to determine each insured's reasonable expectation of the group policy. In order to do so, the fact finder should consider all of the surrounding circumstances, such as the insurance agent's representations to the insured. *See id.* at 395, 682 P.2d at 400. As a breach of contract claim requires consideration of the reasonable expectations of each insured and the circumstances surrounding each contract, individual issues would outweigh any common ones. Thus, the Court cannot certify a class for the breach of contract claim.

■ Even if Defendants did not breach an express provision of the underlying contract, Plaintiff can bring a claim for breach of the implied covenant of good faith and fair dealing. The duty of good faith and fair dealing is implied in every insurance contract. *Rawlings v. Apodaca*, 151 Ariz. 149, 153–54, 726 P.2d 565, 569–70 (1986); *United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 137, 128 P.3d 756, 760 (2006). Similar to a breach of contract claim, though, a good faith and fair dealing claim requires consideration of the parties' reasonable expectations. A defendant breaches the duty "by acting in ways not expressly included in the contract but which nonetheless bear adversely on the other party's reasonably expected benefits of the bargain." *United Dairymen*, 212 Ariz. at 138, 128 P.3d at 761 (citations omitted). As a good faith and fair dealing claim requires consideration of each insured's reasonable expectations, individual issues would outweigh any common ones so that the Court cannot certify a class.

■ Finally, Defendants contend that Plaintiff's unjust enrichment claim requires proof of reliance because it is based on misrepresentations (Tr. 48:9–14) (citing *Waddell v. White*, 56 Ariz. 420, 426–27, 108 P.2d 565, 568–69 (1940)). The Court slightly disagrees with this characterization. "Unjust enrichment occurs whenever a person has and retains money or benefits which in justice and equity belong to another." *City of Sierra Vista v. Cochise Enters., Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (1984). To prevail on an unjust enrichment claim in Arizona, a plaintiff must prove five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the

---

5. As noted, Plaintiff states the common issue for the class as "whether class members should have the opportunity to receive reimbursement of premiums related to tier rating when such policies were sold as group coverage" (Dkt. 74 at 10:9–13). Plaintiff separates this issue into three parts: (1) whether Defendants utilized a tier rating methodology at renewal for the MedOne policies after promoting and selling them as group policies; (2) whether Defendants made the group representation in its advertisements and policy; and (3) whether Defendants committed violations of Arizona law by selling purported group insurance that they tier rated at renewal (*Id.* at 10:1–8). Thus, the common issue revolves around the marketing and selling of the product, and not around a breach of a particular provision of the insurance contract.

impoverishment; (4) absence of justification for the enrichment and the impoverishment and (5) an absence of a remedy provided by law. *Id.* In *Waddell v. White,* the plaintiff sought damages for unjust enrichment of defendants by means of false and fraudulent representations. 56 Ariz. at 422, 108 P.2d at 567. The Arizona Supreme Court recognized that an adequate remedy at law existed because the action was based on fraud. *See id.* at 426, 108 P.2d at 568. Therefore, the court required plaintiff to prove the elements of common law fraud. *See id.* at 426–27, 108 P.2d at 568–69. As such, an unjust enrichment claim does not require reliance when it is tied to alleged misrepresentations. Rather, if an unjust enrichment claim is based on fraud, then a plaintiff has an adequate remedy at law and should prove the fraud claim. *See id.; see also McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.,* 339 F.3d 1087, 1093–94 (9th Cir.2003) (recognizing that an equitable remedy is unnecessary where a legal remedy for the same wrong is available under state law, even if against a different party). Here, Plaintiff appears to have adequate remedies at law because her claims are primarily based on Defendant's allegedly fraudulent representations, and she has brought two statutory fraud claims. Moreover, individual issues determine whether or not an adequate remedy at law exists for each class member, and thus, individual issues outweigh any common ones so that Plaintiff cannot show predominance for an unjust enrichment claim.

Although Plaintiff brought several claims, Plaintiff's statutory fraud claims are at the heart of this proposed class action. Plaintiff only proposes a common issue revolving around Defendants' representations during the marketing and selling of their insurance product, and Plaintiff does not advance any other theory to support her non-fraud claims. Significantly, Plaintiff generally argues that the proposed class is sufficiently cohesive for the non-fraud claims, but Plaintiff's general statements regarding these claims do not meet the more demanding burden for predominance. *See Amchem Prods.,* 521 U.S. at 623–24, 117 S.Ct. 2231. As such, Plaintiff has not shown that any of her claims can be certified for a class action. Consequently, the Court need not reach the question of whether a class action is a superior method of adjudication for the claims.

## CONCLUSION

After a rigorous analysis, the Court is not satisfied that Plaintiff has set forth sufficient facts in order to certify a class under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff cannot demonstrate that common questions predominate over any questions affecting only individual members because individualized issues of reliance exist for the statutory fraud claims. Moreover, the Court cannot certify Plaintiff's other claims because she has likewise not met the demanding burden of showing predominance for them. As Plaintiff has not shown that the proposed class is sufficiently cohesive to meet Rule 23(b)(3), the Court denies Plaintiff's motion for class certification.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Class Certification (Dkt.73) is **DENIED.**